IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SPECTATOR BLANKETS II, LLC, a Utah limited liability company,<br><br>     Plaintiff,<br><br><br><br><br>     vs.<br><br><br>JACK MCKEON dba BUILD TEAM SPIRIT, a citizen of the State of California,<br><br>     Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br><br><br>Case No. 2:-08-CV-919 TS |

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. For the reasons discussed below, the Court will deny the Motion.

## I.  FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and are uncontroverted by Defendant's affidavits.[1]  Plaintiff is a Utah limited liability company with its principal place of

---

[1]As discussed below, Defendant has submitted two affidavits in support of his Motion. Neither affidavit contradicts the allegations in the Complaint. Thus, they are taken as true for the purposes of this Motion. *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990)("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . .") (quoting marks and citation omitted).

business in Salt Lake City, Utah.  Plaintiff provides customized promotional blankets, among other blanket products, to schools, churches, companies, and other entities.  Plaintiff has developed a unique product and business plan that allows it to compete successfully in the promotional and logo blanket market.  Plaintiff has expended large amounts of time and energy, as well as substantial sums of money, to develop its unique product, business plan, and customer base.

In early 2007, Howard McKeon and Defendant McKeon approached David Logan, the Chief Executive Officer of Plaintiff.  Howard McKeon is Logan's brother-in-law and a cousin of Defendant McKeon.  Howard and Defendant McKeon represented that they were in contact with individuals who might be interested in investing in Plaintiff.  These three individuals engaged in various communications in regard to these possible investors and Defendant McKeon's possible involvement with Plaintiff.

In April 2007, Logan, Howard, and Defendant McKeon met in Utah to discuss these topics.  During this meeting, Logan communicated to Howard and Defendant McKeon that Plaintiff's business plan, the information about its unique material specifications, the identity of its suppliers and manufacturer, and the other valuable information set forth in Plaintiff's business plan was confidential and should not be discussed in public.  Howard and Defendant McKeon agreed to keep Plaintiff's business plan and other sensitive information confidential.  Howard and Defendant McKeon reviewed Plaintiff's business plan, material specifications, financial information, and the identities and location of Plaintiff's suppliers and manufacturers.

Throughout the spring and summer of 2007, Plaintiff and Defendant continued to communicate regarding Defendant's possible involvement/investment in Plaintiff.  Howard and Defendant McKeon reviewed additional confidential information during these meetings,

including information regarding Plaintiff's customers, manufacturing costs, shipping costs and product pricing. As a result, Howard and Defendant McKeon possess knowledge of Plaintiff's key business information and confidential trade secrets.

In the fall of 2007, Logan, Howard, and Defendant McKeon met in Salt Lake City. Howard made an offer to invest in Plaintiff in exchange for the position of Chief Financial Officer and an equity position in the company. Howard's offer was contingent upon Plaintiff granting Defendant McKeon employment and an equity stake in Plaintiff. Plaintiff rejected Howard's offer and made a counteroffer that did not provide Defendant McKeon with a position with Plaintiff. Logan and Defendant McKeon then met at Plaintiff's offices in Salt Lake City to discuss Defendant McKeon's possible employment with Plaintiff, but no agreement was reached.

At approximately the same time, Defendant asked Plaintiff for permission to sell certain Plaintiff products to a high school in California. Plaintiff agreed and instructed Defendant on how to make the sale. After this sale, Defendant again contacted Plaintiff and requested to follow up on a Plaintiff sales lead. As part of this effort, Defendant requested that Plaintiff provide a graphic layout design. Plaintiff complied with this request and, in early September 2007, Plaintiff provided Defendant with the requested design layout. Plaintiff never heard back from Defendant in regard to the prospective sale.

Unbeknownst to Plaintiff, Defendant allegedly decided to enter the exact same industry as Plaintiff and to use Plaintiff's confidential information and trade secrets against Plaintiff to the benefit of his new business. Plaintiff alleges that Defendant is using its manufacturer to enter the industry and submitted a material specification to the manufacturer that is identical to Plaintiff's material specification, including the same material, yarn, and other characteristics. Defendant

3

has allegedly negotiated with that same manufacturer to receive the same pricing terms as

Plaintiff.  Plaintiff alleges that Defendant has secured the services of the same freight forwarding

company used by Plaintiff.  Plaintiff further alleges that Defendant has used Plaintiff's business

leads to make sales.

 In addition to the allegations in the Complaint, both Plaintiff and Defendant have

submitted affidavits.  In support of his Motion, Defendant has submitted the Affidavit of Howard

McKeon.  That affidavit provides that, in the spring of 2007, Howard and Defendant McKeon

met with Logan in Salt Lake County, Utah to discuss possible involvement or investment in

Plaintiff.  The affidavit further states that Howard McKeon had no further meetings in Utah to

discuss possible involvement or investment in Plaintiff and that he is unaware of any other

meetings in Utah between Logan and Defendant McKeon to discuss these same topics.

 In addition to the Affidavit of Howard McKeon, Defendant has submitted his own

affidavit.  That affidavit provides that Defendant met with Logan and Howard McKeon in Utah

on two occasions during the spring of 2007 to discuss possible involvement or investment in

Plaintiff.  Defendant states that he has not met with Logan in Utah to discuss these topics or for

any other reason outside these two meetings.  Defendant further represents that he has made no

attempts to have his business establish a presence in Utah, his business does not solicit clients in

Utah, and his business does not hold itself out to the Utah public.

 Plaintiff has submitted the Declaration of David Logan in opposition to Defendant's

Motion.  That Declaration states that in early 2007, Howard and Defendant McKeon contacted

him stating that they could help Plaintiff obtain qualified investor relationships with various

individuals and or entities that they knew.  As a result of these representations, Logan and others

at Plaintiff engaged in months of on-going communications and negotiations regarding

4

Defendant's possible investment or involvement with Plaintiff.  These communications involved dozens of phone calls between Plaintiff and Defendant, two meetings in Salt Lake City, and frequent email communications.

## II. PERSONAL JURISDICTION STANDARD

Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[2]  "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[3]  "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[4]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[5]  "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[6]  "The allegations in the complaint must be taken as true to the extent

---

[2]*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[3]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[4]*Sys. Designs, Inc. v. New Customward Co.*, 248 F.Supp. 2d 1093, 1097 (D. Utah 2003).

[5]*World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[6]*Bell Helicopter Textron, Inc. v. Heliqwest Int'l., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[7]

## III.  DISCUSSION

A.    MINIMUM CONTACTS

The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.  When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those activities."[8]  In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[9]

The facts, as they relate to this Motion, show that Defendant reached out to a company in Utah—Plaintiff—regarding possible investment or involvement in that company.  This contact led to a number of meetings and discussions between Plaintiff and Defendant, with at least two meetings occurring in Utah.  In addition, there were numerous phone calls and email communications.  Through these communications, Defendant learned Plaintiff's confidential business information and trade secrets, and agreed to keep them confidential.  At one point, Defendant even sought, and was given, permission to make sales of Plaintiff's products. Plaintiff claims that Defendant has improperly used its confidential information to his benefit and to its detriment.

---

[7] *Kennedy*, 919 F.2d at 128.

[8] *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[9] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

Defendant argues that these contacts are insufficient to show purposeful availment. Rather, he argues that these contacts are "random, isolated, or fortuitous."[10]

The Supreme Court, in *Burger King*, stated that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities."[11]  This is precisely what Defendant did here.  Defendant reached out from California seeking to establish a relationship, either as an investor or an employee, with a Utah company.  By doing so, Defendant was given Plaintiff's confidential business information and trade secrets.  Much of the confidential information was communicated to Defendant in meetings held in Utah.  Defendant also approached Plaintiff offering to make sales for Plaintiff, which he did.  Plaintiff now claims that Defendant is using this confidential information to his benefit and its detriment.  The Court finds that this is "some evidence suggesting purposeful availment."[12]

In addition, Defendant has admitted that he has come to Utah on two occasions to meet with Logan concerning possible investment or involvement in Plaintiff.  Defendant's physical presence in Utah further supports a finding of jurisdiction.

Finally, the Declaration of David Logan reveals a myriad of phone and email conversations between himself and others at Plaintiff and Defendant McKeon.  "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish

---

[10]*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

[11]*Id*. at 473 (quotation marks and citation omitted).

[12]*Far West Capital*, 46 F.3d at 1076.

minimum contacts."[13]  However, such contacts "provide additional evidence that [Defendant] pursued a continuing business relationship with a Utah corporation."[14]

The Court finds that the combination of the contacts here are sufficient to show that Defendant purposefully directed his activities at residents of Utah.  Defendant contacted Plaintiff, a Utah company, seeking to invest or somehow be involved with that company.  This contact resulted in a number of meetings, at least two of which occurred in Utah, and numerous email and telephone communications.  Defendant did indeed become involved with Plaintiff and was provided with confidential business information.  Defendant even sought, and was given permission, to make sales of Plaintiff's products.  These activities "represent an effort by the defendant to purposely avail [himself] of the privilege of conducting activities within the forum state."[15]

All of the cases cited by Defendant, with the exception of *Far West Capital*, are distinguishable from this case because they did not involve a defendant affirmatively reaching out to a Utah company to engage in a business relationship.  In *Far West Capital*, there was some solicitation by the defendant in Utah.[16]  There, the defendant had faxed a letter to the plaintiff suggesting that the plaintiff should contact her if it wanted to explore an arrangement.[17]  The court found that this solicitation was so remote that it provided little in support of personal

[13]*Id.*

[14]*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005).

[15]*Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418-19 (10th Cir. 1988) (quotation omitted).

[16]*Far West Capital*, 46 F.3d at 1076.

[17]*Id.* at 1073.

jurisdiction.[18]  Here, the solicitation by Defendant was much more substantial than it was in that case.

Defendant also argues that Plaintiff's causes of action are not related to his contacts with Utah.  Defendant argues that Plaintiff's causes of action relate to conduct which occurred in the state of California.  The Court disagrees.  As set forth above, the Court may exercise specific jurisdiction in cases that "arise out of or relate to" Defendant's activities in Utah.  Plaintiff's causes of action revolve around Defendant's use of Plaintiff's alleged trade secrets.  While Defendant may have inappropriately made use of those trade secrets in California, Defendant would not have had access to those trade secrets if not for his activities in Utah.

B.     TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

If the Court finds that the Defendant had adequate minimum contacts with the forum state, the Court must also determine that personal jurisdiction is reasonable in light of the circumstances surrounding the case, or, in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[19]  "Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[20]  The Court will consider each of these factors in turn.

---

[18]*Id.*

[19]*Burger King*, 471 U.S. at 476.

[20]*Bell Helicopter*, 385 F.3d at 1296.

First, there is no evidence that litigating this matter in Utah would unduly burden Defendant.  As set forth above, Defendant has demonstrated his willingness and ability to travel to Utah to conduct business.  It should be no more difficult for Defendant to travel to Utah to conduct this litigation.  Therefore, this factor weighs in favor of jurisdiction.

Turning to the second element, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[21]  As this Court has recognized, "the State of Utah has an interest in seeking that the interests of a business operating within its boundaries are protected."[22]  Here, the State of Utah has an interest in protecting the trade secrets of a Utah corporation.  That interest is clearly evidenced by the Utah Trade Secret Act.  Thus, this factor weighs in favor of jurisdiction.

The third factor the Court must consider

hinges on whether the Plaintiff may receive convenient and effective relief in another forum.  This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.[23]

There is no evidence before the Court on this factor.  Therefore, it does not weigh in favor or against jurisdiction.

The fourth factor "asks 'whether the forum state is the most efficient place to litigate the dispute.'"[24] Factors to consider "are the location of witnesses, where the wrong underlying the

---

[21]*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998).

[22]*Nova Mud Corp. v. Fletcher*, 648 F.Supp. 1123, 1127 (D. Utah 1986).

[23]*OMI Holdings, Inc.*, 149 F.3d at 1097.

[24]*Pro Axess, Inc.*, 428 F.3d at 1281 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097).

lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[25]  Considering these things, the Court finds this factor weighs evenly for and against jurisdiction.  Witnesses will be located in both Utah and California.  The wrong underlying this case was allegedly committed in California, with effects being felt in Utah.  Plaintiff asserts that Utah law is applicable in this case and Defendant has not challenged that assertion.  Finally, there is no evidence that jurisdiction in Utah is necessary to prevent piecemeal litigation.  Based on the above, the Court finds that this factor neither weighs in favor nor against jurisdiction.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interest of other states or foreign nations."[26]  There is nothing here to suggest that jurisdiction in Utah affects the substantive social policy interest of California.  Therefore, this factor weighs in favor of jurisdiction.

Based on all of the above, the Court finds that exercising jurisdiction in this case would not offend traditional notions of fair play and substantial justice.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 7) is DENIED.  The hearing set for May 18, 2009, is STRICKEN.

---

[25]*OMI Holdings, Inc.*, 149 F.3d at 1097 (citations omitted).

[26]*Id.*

DATED   April 23, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge